**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BLACK STAR FARMS LLC; JOHN
NORTON; GARY FRISCH; MICHELLE
FRISCH; DAVID MONHEIT; MELISSA
MONHEIT,
             *Plaintiffs-Appellants,*

             v.

JERRY OLIVER, in his official
capacity as Director of the State of
Arizona Department of Liquor
License and Control,
             *Defendant-Appellee,*

ALLIANCE BEVERAGE DISTRIBUTING
COMPANY LLC,
      *Defendant-Intervenor-Appellee.*

No. 08-15738

D.C. No.
2:05-CV-02620-
MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
September 15, 2009—San Francisco, California

Filed April 13, 2010

Before: Stephen S. Trott and Carlos T. Bea, Circuit Judges,
and Suzanne B. Conlon,* District Judge.

Opinion by Judge Trott

*The Honorable Suzanne B. Conlon, United States District Judge for
the Northern District of Illinois, sitting by designation.

**COUNSEL**

James A. Tanford, Indiana University School of Law, Bloomington, Indiana, for the plaintiffs-appellants.

Kathleen P. Sweeney, Assistant Attorney General, Phoenix, Arizona, for the defendant-appellee.

Deborah A. Skakel, Dickstein Shapiro LLP, New York, New York, for the intervenor-defendant-appellee.

Kevin E. O'Malley, Gallagher & Kennedy, P.A., Phoenix, Arizona, for the defendant-intervenor-appellee.

**OPINION**

TROTT, Circuit Judge:

This case involves a Michigan winery's claim that certain provisions of Arizona's statutory scheme regulating the direct shipment of wine from wineries — whether located in-state or out-of-state — to Arizona consumers violate the dormant Commerce Clause. The Plaintiffs-Appellants (collectively "Black Star Farms") claim that those provisions, in practical effect, unlawfully discriminate against out-of-state wineries.

Arizona generally requires all alcoholic beverages sold to consumers in the state to pass through a three-tier distribution system comprised of producers, wholesalers, and retailers. However, Arizona has carved out two exceptions to its system that allow wineries under specified circumstances to bypass the three-tier distribution system. First, all wineries that pro-

duce less than 20,000 gallons of wine per year — whether located in-state or out-of-state — are allowed to ship an unlimited amount of wine directly to consumers, regardless of how the order is placed, and to sell directly to retailers. Second, all wineries — whether located in-state or out-of-state — are allowed to ship two cases of wine per year directly to consumers who purchase wine while they are physically present at the winery. Relying on *Granholm v. Heald*, 544 U.S. 460 (2005), which held that States may mandate a three-tier distribution scheme regulating the sale of wine so long as the scheme does not unlawfully discriminate against out-of-state wineries, Black Star Farms contends that these challenged exceptions to the three-tier system violate the dormant Commerce Clause.

We conclude that Arizona's statutory exceptions to its three-tier distribution system, which treat similarly situated in-state and out-of-state wineries the same and impose no new impermissible burdens on out-of-state wineries, do not have the practical effect of "favor[ing] in-state economic interests over out-of-state interests." *Id.* at 487. Therefore, we affirm the district court's order granting summary judgment in favor of the State.

# I

## BACKGROUND

Arizona regulates the sale of alcoholic beverages through a three-tier distribution system comprised of suppliers (e.g., wineries, distilleries, and breweries), wholesalers, and retailers. *See* Ariz. Rev. Stat. §§ 4-243.01, 4-244(6)-(7). Generally, suppliers may sell and deliver only to wholesalers, wholesalers may sell and deliver only to retailers, and retailers may sell and deliver only to consumers. *Id.* For the purposes of this case, there are two key exceptions to this three-tier distribution system:

1. **The "small winery" exception**,[1] which allows any winery, wherever located but which produces no more than 20,000 gallons of wine per year, to ship an unlimited amount of its wines directly to consumers, regardless of how the consumer places his purchase order, and to sell directly to retailers. Ariz. Rev. Stat. § 4-205.04(C)(7), (9).[2]

2. **The "in person" exception**, which allows any winery, wherever located, to ship up to two cases of its wines per year directly to a consumer, but only if the consumer is physically present at the winery when he buys the wine. Ariz. Rev. Stat. § 4-203.04(J).[3]

Either or both exceptions are available on equal terms to wineries located in Arizona and to wineries located elsewhere.

The Arizona legislature created these exceptions in direct response to *Granholm*, which held that the Commerce Clause prohibits States from discriminating against interstate commerce when they regulate the transportation and importation of alcohol pursuant to the Twenty-First Amendment. *See* S.B. 1276, 47th Leg., 2d Reg. Sess. (Ariz. 2006). Senate Bill 1276's statement of purpose was as follows:

---

[1] The district court referred to the small winery exception as a "gallonage cap exception." *Black Star Farms, LLC v. Oliver*, 544 F. Supp. 2d 913, 917 (D. Ariz. 2008).

[2] We use the term "small winery" to refer to wineries that produce no more than 20,000 gallons of wine per year. We use the term "large winery" to refer to wineries that produce more than 20,000 gallons of wine per year.

[3] Black Star Farms contends that the in-person exception is not available to wineries that produce more than 40,000 gallons of wine per year. It is misinformed. The statute is clear: "*Notwithstanding any other law*, a person may ship wine as long as the following apply . . . ." Ariz. Rev. Stat. § 4-203.04(J) (emphasis added). None of the requirements in section 4-203.04(J) set a 40,000 gallon limit. *Id.*

The purpose of this act is to conform Arizona laws regarding the intrastate and interstate sales and deliveries of wine to the provisions of Public Law 107-273, div. C, Title I, section 11022 and to conform to the requirements of the decision of the United States Supreme Court in *Granholm v. Heald*, 544 U.S. 460, 125 S. Ct. 1885 (2005) by adopting nondiscriminatory laws governing the sale and delivery of wine produced by small wineries. This act is intended to provide for a separate method of regulating only the sale and delivery of wine produced by small wineries. Other than the specific exceptions established by existing law and this act for domestic farm wineries, it is the intent of this act to retain the current three-tier method of regulating the sale and delivery of spirituous liquor and the current revenue collection and enforcement law.

Before passage of Senate Bill 1276, the small winery exception was not available to wineries unless 75% of their wine was produced from grapes grown in Arizona. *Id.* Further, the small winery exception was not available to wineries producing more than 75,000 gallons of wine per year. *Id.* Senate Bill 1276 removed the in-state production requirement and reduced the cap applicable to the small winery exception to 20,000 gallons. *Id.* At that time, only one Arizona winery — Kokopelli Winery — produced more than 20,000 gallons of wine per year.

In 2007, there were more than 4,700 wineries in the United States. In 2004, wineries producing more than 25,000 gallons of wine per year accounted for about 98% of total wine production in the United States. However, more than 70% of all wineries produced less than 25,000 gallons per year.

Black Star Farms, a Michigan winery, produced approximately 35,000 gallons of wine in 2006. Thus, the small winery exception was not available to Black Star Farms.

Nevertheless, the in-person exception did allow Black Star Farms to ship up to two cases per year to a consumer who purchased the wine while he was physically present at the winery in Michigan. Plaintiffs-Appellants John Norton, David and Melissa Monheit, and Gary and Michelle Frisch ("consumer plaintiffs") are Arizona residents and wine drinkers who desire to, and are prohibited from, ordering wine from Black Star Farms and other out-of-state wineries over the telephone and internet for delivery in Arizona. They can drink Black Star Farms wines delivered to them in Arizona only if they travel to Michigan and buy the wine at the winery. Black Star Farms does not sell to Arizona wholesalers — its production is too low for wholesalers to carry the brand. Nor can Black Star Farms ship directly to Arizona retailers. The consumer plaintiffs contend "[i]t is economically and practically impossible for [them] to undertake the time and expense to visit wineries located far from Arizona, including those in Michigan, Napa, and Oregon, in order to purchase wine in person and have it shipped home."

Black Star Farms filed an action under 42 U.S.C. § 1983 on the ground that the small winery and in-person exceptions to the three-tier distribution system violate the dormant Commerce Clause because, in practical effect, the two exceptions to the three-tier system discriminate against out-of-state wineries. Black Star Farms sought a declaratory judgment that the statutory provisions were unconstitutional and sought to enjoin enforcement of those provisions.

The district court denied Black Star Farms's motion for summary judgment and granted Defendants' cross-motions for summary judgment, concluding that Black Star Farms failed to carry its burden of showing that the challenged statutory scheme discriminates against out-of-state wineries in practical effect. *Black Star Farms, LLC*, 544 F. Supp. 2d at 928-29. The district court first noted that Arizona's statutory scheme was "facially neutral and evenhanded." *Id.* at 920. The district court held that Black Star Farms failed to prove

that the small winery exception had the effect of discriminating against interstate commerce because (1) there was no evidence the exception allowed in-state wineries to gain market share at the expense of out-of-state wineries, and (2) more than half of all United States wineries can take advantage of the exception. *Id.* at 928. The district court also held that Black Star Farms failed to prove that the in-person exception had the effect of discriminating against interstate commerce because (1) there was no evidence the exception allowed in-state wineries to gain market share at the expense of out-of-state wineries, and (2) Arizona was not required to compensate out-of-state wineries for benefits that accrued to in-state wineries based on their geographical proximity to Arizona consumers. *Id.* at 925.

Black Star Farms appeals the district court's order denying its motion for summary judgment and granting cross-motions for summary judgment filed by Defendant Jerry Oliver, Director of the State of Arizona Department of Liquor Licenses and Control, and Intervenor-Defendant Alliance Beverage Distributing Company. We affirm the district court. On this record, the small winery and in-person exceptions do not discriminate against interstate commerce and, thus, strict scrutiny does not apply. Because Black Star Farms concedes its claims depend on the application of strict scrutiny, its claims must fail.

## II

## STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment and its resolution of federal constitutional issues. *S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 466 (9th Cir. 2001). "We will affirm if the district court applied the correct substantive law and the evidence reveals no genuine issue of material fact when viewed in the light most favorable to the party opposing summary judgment." *Id.*

## III

## THE COMMERCE CLAUSE

**[1]** The Commerce Clause says: "The Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl. 3. The Supreme Court has interpreted the Commerce Clause "to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994). Courts have sometimes referred to this doctrine as the "dormant Commerce Clause." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007).

**[2]** Two levels of scrutiny exist for analyzing state statutes challenged under the dormant Commerce Clause. *Maine v. Taylor*, 477 U.S. 131, 138 (1986). The higher level of scrutiny applies to a state statute that "discriminate[s] against interstate commerce 'either on its face or in practical effect.' " *Id.* (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). For the purposes of the dormant Commerce Clause, " 'discrimination' simply means *differential treatment* of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste*, 511 U.S. at 99 (emphasis added). Of course, the "differential treatment" must be as between persons or entities who are similarly situated. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298-99 (1997); *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525, 527 (9th Cir. 2009). A court must analyze such a statute under the "strictest scrutiny." *Hughes*, 441 U.S. at 337. That is, such a statute is unconstitutional unless it " 'serves a legitimate local purpose,' and . . . this purpose could not be served as well by available nondiscriminatory means." *Taylor*, 477 U.S. at 138 (quoting *Hughes*, 441 U.S. at 336). The party challenging the statute bears the burden of showing discrimination. *Hughes*, 441 U.S. at 336. In

this case, we agree with the district court that Black Star Farms has not successfully met this burden.

## IV

## DISCUSSION

### A.

### Background

**[3]** In the district court, Black Star Farms conceded that the statutory scheme at issue is not discriminatory on its face. It also accused Arizona's scheme of being the product of obvious "economic protectionism," but it did not pursue this allegation other than as an atmospheric circumstance. Indeed, in its reply brief to us, Black Star Farms says that this "issue is not important," conceding (1) "that the evidence of [legislative] protectionist intent is largely circumstantial," and (2) that it "do[es] not have a smoking gun" on which to rely. Accordingly, it declares that "it does not matter if the legislature had protectionist intent, because a finding that state legislation constitutes economic protectionism may be made on the basis of either discriminatory purpose or discriminatory effect."[4] Reply Brief at 24 (quotation and citation omitted). Thus, it relies here, as it did in the district court, on its argument "that the in-person and gallonage cap exceptions are discriminatory in effect." *Black Star Farms, LLC*, 544 F. Supp. 2d at 918. Moreover, in its brief to us, it "agree[s] . . . that the Arizona laws at issue would pass constitutional muster under the minimal scrutiny test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)" (a state law that applies evenhandedly to in-state and out-of-state entities is subject to less searching scrutiny). Therefore, Black Star Farms's appeal asks us effectively to

---

[4]In any event, the "evidence" of a legislative economic protectionist purpose advanced by Black Star Farms is insufficient to survive summary judgment were this an active issue.

decide one question, and one question only.[5] That question is whether Arizona's statutory scheme for regulating the shipment of wine to consumers has the *practical effect* of "favor-[ing] in-state economic interests over out-of-state interests." *Granholm*, 544 U.S. at 487.

This question presents itself to us in the context of a motion for summary judgment, which Black Star Farms failed to survive. Accordingly, the question we must examine and answer de novo is whether the *record* adduced by Black Star Farms was sufficient to support a verdict in its favor to the effect that this facially neutral and even-handed scheme does have such a prohibited discriminatory effect. We conclude that the record would not support such a verdict, as we shall explain.

## B.

### Analysis

[4] The summary judgment record, as described by Judge Murguia, is devoid of any substantial evidence of an *actual* adverse effect created by this scheme — including its exceptions — which we repeat is facially neutral. We agree with her assessment:

> Plaintiffs proffer no evidence to suggest that such a limited [direct shipment] exception, applicable to both in-state and out-of-state wineries, erects a barrier to Arizona's wine market that in effect creates a burden that alters the proportional share of the wine market in favor of in-state wineries, such that out-of-state wineries are unable to effectively compete in the Arizona market.

[5]As noted in Part V of this opinion, Black Star Farms attempts on appeal to raise a new issue, but we decline to address it.

*Black Star Farms, LLC*, 544 F. Supp. 2d at 925.

> Further, there is no indication whatsoever that the in-person exception has any effect on the flow of interstate commerce; no indication that the exception creates a system under which local goods constitute a larger share, and goods with an out-of-state source constitute a smaller share, of the total sales in the market.

*Id.*

> Plaintiffs have not established that Arizona's in-person and [small winery] exceptions to the State's three-tiered distribution system somehow alter the proportional share of the State's wine market in favor of in-state wineries.

*Id.* at 927.

[5] Judge Murguia's conclusion was that Black Star Farms's burden was to offer "substantial evidence of an actual discriminatory effect," but that "such evidence is absent here." *Id.* at 928. We agree.

## C.

### The "Small Winery" Exception

The district court observed with respect to the small winery exception that the number of out-of-state wineries that can take advantage of it "dwarf[s] the number of in-state wineries" that can do so. *Id.* at 926. Moreover, the district court noted that "almost twice as many out-of-state wineries than in-state wineries have already obtained" the necessary licenses. *Id.*

[6] Surely, as recognized by the district court, there are facially neutral schemes of this sort which in practice do have

the effect of deleteriously intruding upon Interstate Commerce, but here, Black Star Farms has not presented us with such a factual scenario or case. *See*, *e.g.*, *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 352-53 (1977). In essence, Black Star Farms asks us without substantial evidentiary support to speculate and to infer that this scheme necessarily has the effect it fears. This leap of faith we will not take. Courts examining a "practical effect" challenge must be reluctant to invalidate a state statutory scheme regulating alcoholic beverages simply because it *might* turn out down the road to be at odds with our constitutional prohibition against state laws that discriminate against Interstate Commerce. The proof of the pudding here must be in the eating, not in the picture on the box as seen through the partial eyes of the beholder — which is especially true in a case where neither facial economic discrimination nor improper purpose is an issue.

As brought to our attention in their helpful amicus brief by the Wine and Spirits Wholesalers of America, Inc., the American Beverage Licensees, and the Sazerac Company, three of our sister circuits agree with this approach to a case asserting a discriminatory effect claim. *See*, *e.g.*, *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 36 (1st Cir. 2007) (plaintiff claiming discriminatory effect must submit "probative evidence of adverse impact" and where a statutory provision "is evenhanded on its face and wholesome in its purpose," a "substantial" evidentiary showing is required to prove discriminatory effect); *National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) (discriminatory effect was not established where "plaintiffs did not offer any evidence"); *Eastern Ky. Res. v. Fiscal Court of Magoffin County*, 127 F.3d 532, 544 (6th Cir. 1997) ("[U]nless there is evidence that a state law treats in-state economic interests differently than out-of-state economic interests, that law is valid . . . .").

**[7]** In other words, prove it, or lose it. When challenged in its briefs to do so, Black Star Farms's answer in its reply brief

effectively is, we don't have to, it should be obvious. Based upon precedent and logic, we disagree. As the First Circuit aptly observed in *Baldacci*, "[c]onjecture . . . cannot take the place of proof." 505 F.3d at 39.

The First Circuit decided *Family Winemakers of California v. Jenkins*, 592 F.3d 1 (1st Cir. 2010), after this case was submitted for decision. In that case, which is manifestly distinguishable from this case (and which cited *Baldacci* with approval), the First Circuit struck down a Massachusetts statute establishing differential methods by which wineries distribute wine in that State. That statute differentiated between "small" wineries producing 30,000 gallons or less of grape wine a year, on one hand, and "large" wineries producing more than 30,000 gallons of such wine, on the other. The fatal problem identified by the First Circuit was that small wineries could sell their wines in Massachusetts in three ways: "by shipping directly to consumers, through wholesaler distribution, and through retail distribution." *Id.* at 4. All Massachusetts wineries were "small" and could use all of these methods. By contrast, "large" wineries, all of which were located in other states, were required to "choose between relying upon wholesalers to distribute their wines [in Massachusetts] or applying for a 'large winery shipping license' to sell directly to Massachusetts consumers. They cannot, by law, use both methods to sell their wines in Massachusetts, and they cannot sell wines directly to retailers under either option." *Id.*

The relevant issue in that case was whether the Massachusetts law was "discriminatory in effect." *Id.* at 10. The court held that it was because the *evidence* offered demonstrated that the law conferred "a clear competitive advantage to 'small' wineries, which includes all Massachusetts's wineries, and creates a comparative disadvantage for 'large' wineries, none of which are in Massachusetts." *Id.* at 11 (citing *Baldacci*, 505 F.3d at 36-37). Thus, the evidence adduced by Family Winemakers demonstrated that the effect of Massa-

chusetts's law was " 'to cause local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market.' " *Id.* at 10 (quoting *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 n.16 (1978)).

**[8]** The short answer to *Family Winemakers* is twofold. First, the Arizona statute does not force "large" winemakers into a restrictive method of distribution in comparison with "small" winemakers. The restrictive method of distribution — the three-tier distribution system — already existed. The Arizona statute freed all small wineries, whether located in-state or out-of-state, from that restrictive method of distribution. Second, the plaintiffs in that case, unlike the plaintiffs here, had evidence to prove their contentions. We reiterate Judge Murguia's correct analysis:

> Arizona's gallonage cap exception does not restrict the flow of interstate commerce in favor of in-state wineries and in effect opens up the State's wine market to allow more out-of-state wineries than in-state wineries to take advantage of Arizona's gallonage cap exception and directly ship to Arizona consumers.
>
> Plaintiffs must offer substantial evidence of an actual discriminatory effect in order to take advantage of heightened scrutiny and shift the burden of proof to the State; but such evidence is absent here. Plaintiffs have offered no indication that Arizona's in-person and [small winery] exceptions create a market under which local goods constitute a larger share, and goods with an out-of-state source constitute a smaller share, of the total sales in the market. The mere fact that more out-of-state wineries than in-state wineries are required to adhere to Arizona's three-tiered distribution system is not by itself sufficient to establish that Arizona's statutory scheme is

patently discriminatory in effect against interstate commerce. That fact at best supports the contention that Arizona's statutory scheme places an incidental burden on interstate commerce. If the Court were to find otherwise, then no distinction would exist between statutes that are patently discriminatory in effect and those that are subject to the incidental burden test under the *Pike* analysis. This Court is not inclined to abolish that distinction.

*Black Star Farms, LLC*, 544 F. Supp. 2d at 928.

*Granholm*, Black Star Farms's primary case authority, does not support its arguments. In *Granholm*, "[o]ut-of-state wineries [in Michigan], whether licensed or not, face[d] a complete ban on direct shipment." 544 U.S. at 473-74. Such is not the case here. As for New York, in-state licensed producers could ship directly from their wineries to their customers, but out-of-state wineries were required to "open a branch office and warehouse in New York." *Id.* at 474. The Court opined that "New York's in-state presence requirement runs contrary to our admonition that States cannot require an out-of-state firm 'to become a resident in order to compete on equal terms.' " *Id.* at 475 (quoting *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 72 (1963)). Arizona's laws do not approach this level of discriminatory effect. The district court was correct in its observation that in *Granholm*, "the exceptions in effect allowed only in-state wineries, to the exclusion of *all* out-of-state wineries, to bypass the states' three-tiered distribution system and ship directly to consumers." *Black Star Farms, LLC*, 544 F. Supp. 2d at 920.

Finally, we agree with Judge Murguia that "[n]othing in *Granholm* suggests that the Supreme Court was concerned about equalizing the inherent marketing advantage that accrues to in-state wineries because of their close proximity to a state's consumers." *Id.* at 925.

## D.

## The "In-Person" Exception

**[9]** Again, for dormant Commerce Clause purposes, " 'discrimination' simply means *differential treatment* of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste*, 511 U.S. at 99 (emphasis added). As the Supreme Court explained in *Granholm*, "[i]f a State chooses to allow direct shipment of wine, it must do so on evenhanded terms." 544 U.S. at 493. Black Star Farms seems to suggest that *Granholm* presents States with only two choices in regulating the direct shipment of wine from wineries to consumers: (1) prohibit *all* direct shipment of wine, or (2) allow all wineries to ship directly to consumers *without* any restrictions that might incidentally burden out-of-state wineries, such as an in-person purchase requirement. We disagree. Instead, we read *Granholm* to permit States to limit direct shipment from wineries *so long as the limitations treat in-state and out-of-state wineries in the same manner*, *see id.* at 474, and do not impose new burdens on out-of-state wineries, *see Hunt*, 432 U.S. at 351.

**[10]** Arizona's in-person purchase requirement does not discriminate against out-of-state wineries. The requirement treats in-state and out-of-state wineries the same — there is no "differential treatment." *See Or. Waste*, 511 U.S. at 99. The direct shipment of wine under a direct shipment license — whether by an in-state or out-of-state winery — is subject to the in-person purchase requirement, regardless of the state in which the winery is found, including Arizona. Ariz. Rev. Stat. § 4-203.04(J). This requirement does not impose any new burden on out-of-state wineries. *See Granholm*, 544 U.S. at 474 (explaining that the New York statute imposed a new burden on out-of-state wineries by requiring them to open a new location in New York); *Hunt*, 432 U.S. at 351 (explaining that the North Carolina statute imposed a new burden on out-of-state apple growers by requiring them to remove state quality

labels from apples shipped to North Carolina). As the First Circuit explained, "[a]n effect is not discriminatory, in violation of the dormant commerce clause, if it results from natural conditions." *Baldacci*, 505 F.3d at 38 n.7.[6] We agree. In addition, Black Star Farms adduced no evidence that the in-person exception causes wine produced by Arizona wineries to constitute a larger share of the total sales in the market. "[T]he mere fact that a statutory regime has a discriminatory *potential* is not enough to trigger strict scrutiny under the dormant commerce clause." *Id.* at 37. A de minimis benefit to in-state wineries is also insufficient to trigger strict scrutiny. *See id.* at 38-39; *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 216 (2d Cir. 2003); *see also Baude v. Heath*, 538 F.3d 608, 612 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009) (upholding an Indiana statute that required consumers who wanted to receive direct shipments of wine from a winery — whether located in state or out of state — to visit the winery and supply proof of age). We must affirm the district court's order granting summary judgment to the defendants. *But see Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 432-33 (6th Cir. 2008) (holding that Kentucky's in-person purchase requirement for direct shipment of wine discriminated against interstate commerce because the plaintiffs presented evidence that the requirement favored in-state wineries and burdened out-of-state wineries).

[11] Accordingly, the district court's award of summary judgment in favor of Arizona's director of its Department of Liquor Licensing and Control shall stand.

---

[6]In *Baldacci*, the plaintiffs challenged a Maine statute that permitted wineries that produced no more than 50,000 gallons of wine per year to sell directly to consumers who were physically present at the winery. 505 F.3d at 31. Unlike Arizona's in-person exception, the Maine statute did not permit wineries to ship the wine to the consumer; the consumer was required to transport the wine himself. *Id.* The First Circuit held that the plaintiffs failed to carry their burden of showing that the requirement was discriminatory in effect. *Id.* at 35. This holding supports our conclusion that in-person purchase requirements do not discriminate against out-of-state wineries.

## V

## NEW ARGUMENT RAISED ON APPEAL

Black Star Farms attempts to raise a new argument on appeal. Black Star Farms contends the Arizona statutes are unconstitutional because they directly regulate interstate commerce. *See NCAA v. Miller*, 10 F.3d 633, 638-39 (9th Cir. 1993) (holding unconstitutional a Nevada statute that had the effect of directly regulating interstate commerce). Because Black Star Farms did not raise this issue before the district court, we decline to address it here. *See AlohaCare v. Hawaii Dep't of Human Servs.*, 572 F.3d 740, 744 (9th Cir. 2009).

## VI

## CONCLUSION

We affirm the district court's order denying Black Star Farms's motion for summary judgment and granting Arizona's cross-motions for summary judgment.

**AFFIRMED.**