In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1362

LEBAMOFF ENTERPRISES, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

ALEX HUSKEY, in his official capacity
as chairman of the INDIANA ALCOHOL AND
TOBACCO COMMISSION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-00744-JMS-TAB—**Jane E. Magnus-Stinson**, *Judge.*

ARGUED SEPTEMBER 13, 2011—DECIDED JANUARY 17, 2012

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* A company (trade name Cap N' Cork) that owns retail liquor stores in the Fort Wayne area of northern Indiana brought this suit, joined by two consumers of wine who live in Indianapolis, to challenge the constitutionality of an Indiana state law that prevents Cap N' Cork from shipping wine to its customers via a motor carrier, such as UPS. Ind. Code.

§ 7.1-3-15-3(d). With an exception, explained below, that is inapplicable to Cap N' Cork, the statute forbids deliveries other than by the seller of the wine or an employee of the seller—and Indianapolis is a 130-mile drive from Fort Wayne, well beyond Cap N' Cork's feasible delivery range.

The company challenges the state law on two grounds. The first is that it is inconsistent with, and therefore preempted by, a federal statute, the Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1605-06, 7, enacted in 1994, that provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier," 49 U.S.C. § 14501(c)(1), with the principal exception of laws concerned with safety. § 14501(c)(2)(A); *City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 441 (2002); *VRC LLC v. City of Dallas*, 460 F.3d 607, 612-14 (5th Cir. 2006).

Since everything in an open economy relates to everything else, the term "related to" cannot be interpreted literally, especially since the statute had a focused aim—to prevent states from nullifying the repeal, by the Motor Carrier Act of 1980, 94 Stat. 793, a statutory component of the deregulation movement, of the federal laws that had made truck transportation a heavily regulated industry, like the railroads and airlines, which were also being deregulated. *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 368 (2008). *Rowe* read the 1994 law to forbid a state to require that a tobacco retailer deliver a tobacco product to a consumer only by a carrier that verified that the recipient was of legal age

to consume tobacco; the state was attempting to regulate a service (delivery of tobacco products) provided by motor carriers. See also *DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 86-87 (1st Cir. 2011).

The state law challenged in the present case does not regulate motor carriers, but it forbids liquor stores to use motor carriers to deliver wine (also beer and liquor, Ind. Code §§ 7.1-3-5-3(d), 7.1-3-10-7(c), products that Cap N' Cork also sells, but for unexplained reasons the company doesn't challenge the beer and liquor provisions), and the effect is to prohibit motor carriers from offering a service they'd like to offer. True, one major carrier, at least, is offering it in Indiana (see UPS, "Shipping Wine," www.ups.com/wine (visited Nov. 28, 2011)), but only to wineries that have verified in person the age of the Indiana residents to whom they ship.

In a case challenging another Indiana regulation of wine, we said that "we know from *Rowe* . . . that states cannot [consistently with the 1994 act] require interstate carriers to verify the recipients' age." *Baude v. Heath*, 538 F.3d 608, 613 (7th Cir. 2008). But the Supreme Court had had no occasion in *Rowe*—a case about the delivery of tobacco products rather than of alcoholic beverages—to address, and did not address, the possible bearing on the Motor Carrier Act of section 2 of the Twenty-First Amendment, which states that "the transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Like all other states, Indiana forbids the sale of alcoholic beverages to anyone under the age of 21. The Twenty-First

Amendment authorizes a state to enforce that prohibition, but not, the Supreme Court has held, by means that seriously impair the federal government's constitutional powers. E.g., *Granholm v. Heald*, 544 U.S. 460, 486 (2005); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996); *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 712 (1984). And those powers include the power to regulate transportation by interstate motor carriers.

In seeking to resolve the tension between the Twenty-First Amendment and the Supremacy Clause, which in the absence of the amendment would invalidate a state law that conflicted with a federal statute, the Supreme Court has thought it important that the "core . . . power" conferred on the states by section 2 of the Twenty-First Amendment is the power of "regulating the times, places, and manner under which liquor may be imported and sold." *Capital Cities Cable, Inc. v. Crisp*, *supra*, 467 U.S. at 716. Indiana's prohibition of the delivery of wine by motor carriers is within that power, because it is an aspect of "regulating the . . . manner under which [wine] may be . . . sold." One might have thought that since the Twenty-First Amendment postdates the Supremacy Clause, *anything* within the core power of the amendment (or within the scope of the amendment, period— forget cores) must trump an inconsistent federal statute. But while the Supreme Court will accord "a strong presumption of validity" to regulations within the core, "strong" is not "conclusive." *North Dakota v. United States*, 495 U.S. 423, 432 (1990) (plurality opinion); cf. *Capital Cities Cable, Inc. v. Crisp*, *supra*, 467 U.S. at 716. "Even though [the challenged statute] represents

the exercise of a core state power pursuant to the Twenty-first Amendment, a balancing of state and federal interests must be conducted." *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1330 (10th Cir. 2010).

So whereas ordinarily a federal law preempts a conflicting state law, if the state law regulates alcoholic beverages the court must balance the federal and state interests; for just as the federal interests derive constitutional protection from the supremacy clause, the state interests derive constitutional protection from the Twenty-First Amendment, unlike the usual case in which federal preemption is asserted. And if the state interests are within the *core* powers that the Twenty-First Amendment confers on the states, there is a thumb on the scale—that is the "strong presumption" of validity.

We're about to see the strong presumption carry the day for the challenged Indiana statute, and that makes us reluctant to get ahead of the Court and declare the "presumption against preemption" that the Court has lately applied in cases, unaffected by the Twenty-First Amendment, in which Congress has legislated in a field traditionally occupied by the states, see, e.g., *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008), conclusive in the field of state regulation of alcoholic beverages, on the ground that the amendment makes it a field of law emphatically occupied (since 1933) by the states.

Indiana requires drivers employed by liquor retailers to be trained in and tested on Indiana's alcohol laws and also trained in the recognition of phony IDs. See Ind. Code §§ 7.1-3-1.5-1, -6, -13, 7.1-3-18-9. It is because the

state doesn't require similar training of motor carriers' drivers that those carriers aren't permitted to deliver alcoholic beverages to a consumer unless, prior to shipping, the consumer's age is personally verified by an employee of the winery from which the consumer is buying. Ind. Code § 7.1-3-26-9(1)(A); *Baude v. Heath, supra*, 538 F.3d at 612. Motor carriers are required to obtain "carriers' alcoholic permits" in order to be allowed to transport alcohol on public highways in Indiana, but their drivers are not required to obtain permits and there is no training requirement either. See Ind. Code §§ 7.1-3-18-1 *et seq.* Allowing motor carriers to deliver wine could therefore undermine the state's efforts to prevent underage drinking, the state having decided not unreasonably that requiring face-to-face age verification by someone who has passed a state-certified training course should reduce the prevalence of that drinking.

The fact that Indiana allows direct deliveries by carriers to wine consumers, where the seller has previously verified the consumer's age in person, but not other such deliveries, might seem to undermine the state's rationale, since there is no training requirement for employees of wineries. But the statute imposes other requirements on the wineries designed to assure accurate age verification, see Ind. Code § 7.1-3-26-9, and it would hardly be feasible for Indiana (and would indeed be severely discriminatory) to require that employees of out-of-state wineries undergo training in Indiana before being permitted to ship to an Indiana consumer.

We might have a different case if a motor carrier were asking the state to allow it to opt into the same training requirement imposed on drivers employed by retailers of wine. That would both weaken the attempt to justify the challenged law on the basis of the Twenty-First Amendment (which so far as relates to this case merely allows a state to take reasonable measures for preventing underage drinking), and discriminate without apparent justification against motor carriers. But as far as appears, no motor carrier has sought such equal treatment with the retailers or been denied it and sued. No motor carrier is a party to this case.

So Cap N' Cork's federal-preemption argument fails, but the company has another string to its bow: it argues that the Indiana law unduly burdens interstate commerce, and so violates the commerce clause of Article I of the Constitution. Not, however, because Indiana may be increasing the cost of wine produced elsewhere; that consequence is inherent in *the* central power conferred on the states by the Twenty-First Amendment— the power to limit or even forbid the consumption of wine within its borders—and overrides the competing interests held to be latent in the commerce clause because otherwise the amendment would be a dead letter. But the amendment does not authorize states to discriminate in favor of local producers—in an extreme case, to forbid the sale in the state of wine produced elsewhere while placing no comparable limits on the sale of wine by wineries located in the state. As the Supreme Court explained in *Granholm v. Heald*, *supra*, 544 U.S. at 484-85, "the aim of the Twenty-first Amendment

was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use. The Amendment did not give States the authority to pass nonuniform laws in order to discriminate against out-of-state goods, a privilege they had not enjoyed at any earlier time." See also *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989).

The Indiana law does not discriminate expressly against out-of-state producers. Both local and out-of-state wineries can deliver to consumers, and by motor carriers if they want, provided the consumer's age has been verified at the winery in person. And both local and out-of-state wineries are bound by the rule that delivery of wine sold by a retailer must be made by the retailer's own employees. But does the absence of express discrimination end the constitutional inquiry?

It is typical in cases in which alcoholic beverage regulations are challenged under the commerce clause to evaluate the challenge before asking whether the Twenty-First Amendment blocks the challenge. For if the challenge would fail even if there were no such amendment, there is nothing to be gained by trying to determine whether, if it would succeed under that assumption, in the actual case the amendment would blunt it. We follow that approach in the balance of this opinion.

The Supreme Court has said that "'when a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry.'"

*Granholm v. Heald*, *supra*, 544 U.S. at 487, quoting *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 579 (1986). But while "without further inquiry" may be fine in a case in which the statute is expressly discriminatory, it doesn't follow that if the effect is implicit, indirect, incidental, or unintended, no further consideration is necessary, even apart from the difficulty of distinguishing between explicit and implicit, direct and indirect.

In *Brown-Forman* we read that "when . . . a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)." 476 U.S. at 579; see also *Wiesmueller v. Kosobucki*, 571 F.3d 699, 703 (7th Cir. 2009). And *Brown-Forman* was a case involving state regulation of alcoholic beverages, as was *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984), which holds that "examination of the State's purpose in this case is sufficient to demonstrate the State's lack of entitlement to a more flexible approach permitting inquiry into the balance between local benefits and the burden on interstate commerce. See *Pike v. Bruce Church, Inc.*" Thus, as in *Granholm* (which cited *Bacchus* approvingly), the Court in *Bacchus* didn't balance because it didn't need to, but neither did it indicate that it would refuse to do so if the effect on commerce were indirect. Nor has any appellate court so held. Our *Baude* decision analyzed Indiana's alcohol laws under *Pike*'s balancing test, and invalidated one of them, *Baude v. Heath*, *supra*, 538 F.3d

at 612, and other courts have analyzed similar laws similarly. Of all cases that cite both *Pike* and *Granholm* or *Pike* and the Twenty-First Amendment, we find none that rejects that approach. Besides *Baude,* see *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 15 (1st Cir. 2007); see also *Freeman v. Corzine*, 629 F.3d 146, 164 (3d Cir. 2010); *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230-31 (9th Cir. 2010); *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 432 (6th Cir. 2008).

The *Pike* standard is intended for cases in which a statute "regulates even-handedly . . . and its effects on interstate commerce are only incidental." *Pike v. Bruce Church, Inc., supra,* 397 U.S. at 142. One might as an original matter suppose that the Twenty-First Amendment insulated merely incidental effects on interstate commerce in alcoholic beverages from constitutional challenges based on the commerce clause. But again we needn't get ahead of the Supreme Court in the matter. So incidental are the effects of interstate commerce in this case—in fact, so negligible—that even if the Twenty-First Amendment were inapplicable, Cap N' Cork would lose its commerce clause challenge.

It is true that the farther away from the consumer a winery is, the harder it is to induce consumers to come for face-to-face age verification at the winery, and most U.S. wineries are on the West Coast, more than 2000 miles from Indiana. But we ruled in *Baude* that this is not unlawful discrimination, given the state's interest (which incidentally would exist even if there were no Twenty-First Amendment, though it would be more

vulnerable to constitutional challenge) in preventing the sale of alcoholic beverages to minors. See also *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 819-20 (5th Cir. 2010); *Black Star Farms LLC v. Oliver*, *supra*, 600 F.3d at 1234-35; *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 36-39 (1st Cir. 2007); but cf. *Cherry Hill Vineyards, LLC v. Lilly*, *supra*, 553 F.3d at 432-33. (We note later that the *Lilly* case is distinguishable.)

This case might seem different because of the position in which out-of-state wineries are placed that ship only small quantities of wine into Indiana. The state has decreed, as it is authorized to do by the Twenty-First Amendment, see *Granholm v. Heald*, *supra*, 544 U.S. at 489; *Baude v. Heath*, *supra*, 538 F.3d at 612; *Wine Country Gift Baskets.com v. Steen*, *supra*, 612 F.3d at 818-19, that any winery that wants to sell its wine through a retailer rather than directly to the consumer must sell the wine to a wholesaler, for resale to the retailer, for resale to the consumer. Indiana wholesalers won't buy small quantities of wine because they can't obtain enough revenue from reselling small quantities to cover their costs. But fulfillment services pool orders for such wines and consign the ordered wines in bulk to wholesalers. The wholesalers can't deliver the wine to consumers, because doing so would circumvent Indiana's three-tier distribution system (winery-wholesaler-retailer), so the retailer with whom the consumer placed the order picks up the wine at the wholesaler's warehouse and delivers it by its own employees to the consumer, who pays the retailer (or the fulfillment service), who pays the wholesaler, who pays the winery. The regulatory

scheme is the same for all wineries that sell in or into Indiana, regardless of where they're located.

Apparently Cap N' Cork is one of only two retail liquor companies in Indiana (and together the two own only a few dozen of the state's thousand or so liquor stores) that pick up from wholesalers wine provided to the wholesalers by fulfillment services and deliver the wine to the retailer's customers. All of Cap N' Cork's 15 stores are in the Fort Wayne area, and all the stores of the other company, which appears to be Payless Liquors, see www.payless-liquors.com (visited Nov. 28, 2011), are in the Indianapolis area. (Given Payless, it's odd that the two individual plaintiffs live in Indianapolis, rather than in a part of Indiana in which there is no wine fulfillment service.) A consumer who lives outside the Fort Wayne area and has not been age-verified by a winery and must therefore buy from a retailer cannot buy through Cap N' Cork, because it will not deliver to a consumer outside that area. No consumers who haven't been age-verified by wineries are permitted to buy wine produced by wineries that either do not produce in Indiana or do not ship into the state quantities large enough to induce wholesalers to stock their wine, unless the consumers live in or very near either Fort Wayne or Indianapolis—the only areas served by fulfillment services.

Local wineries, being more proximate to Indiana consumers than most out-of-state wineries, have a natural advantage over the latter by virtue of the face-to-face identification condition of being allowed to ship directly to consumers. But that as we said is a lawful advantage.

And the fulfillment services enable Indiana wholesalers to stock wine sold by even the smallest wineries. The fact that retailers in certain parts of the state do not offer delivery of wine supplied to wholesalers by fulfillment services suggests a lack of demand, other than in Fort Wayne or Indianapolis, for such wine, rather than anything to do with the challenged state law.

The case comes down to a complaint that state law is preventing Cap N' Cork from enlarging its sales area to encompass parts of Indiana remote from Fort Wayne. If true that is an effect on intrastate commerce, not interstate commerce. No effect on interstate commerce has been shown, in contrast to the factual showing of effect on interstate commerce that persuaded the Sixth Circuit in *Cherry Hill Vineyards, LLC v. Lilly, supra*, 553 F.3d at 432-33, to invalidate a law similar to the one upheld in *Baude*. The absence of even an incidental effect on interstate commerce excuses us from having to wrestle with the continued applicability of the *Pike* standard to state laws that while they discriminate incidentally against interstate commerce are at the same time within the Twenty-First Amendment's gravitational field.

AFFIRMED.

HAMILTON, *Circuit Judge*, concurring in the judgment. I agree with my colleagues that the district court's grant of summary judgment for the defendant should be affirmed, but with respect, I reach that conclusion by a different route. In rejecting plaintiffs' preemption and dormant Commerce Clause theories, my colleagues apply a quasi-legislative form of interest-balancing. In my view of the applicable law, the Twenty-first Amendment to the Constitution should foreclose those balancing tests when the state is exercising its core Twenty-first Amendment power to regulate the transportation and importation of alcoholic beverages for consumption in the state. The challenged state law here, forbidding some but not all direct deliveries of alcohol by common carriers to consumers, falls within that core power. The law should be upheld even if, as I believe, its actual benefits are minimal and its burdens on federal interests are significant.

In recent years, the Supreme Court has held that the Twenty-first Amendment did not protect many state alcoholic beverage laws challenged on a host of federal law grounds. See *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 192-201 (2d Cir. 2009) (Calabresi, J., concurring) (reviewing Twenty-first Amendment cases and describing Supreme Court's recent "vector" toward prohibiting any state alcoholic beverage laws from discriminating against interstate commerce); *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 851-53 (7th Cir. 2000) (reviewing constitutional history of alcoholic beverage law). By applying the balancing tests to this Indiana law, however, my colleagues go farther than the Supreme Court

has gone. My colleagues in the end also uphold the challenged law, but I believe the use of these balancing tests will tend to erode the states' powers protected by the Twenty-first Amendment.

I.  *Preemption and the Twenty-first Amendment*

Turning first to plaintiffs' preemption argument under the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. §§ 14501(c)(1), 41713(b)(4)(A), the Twenty-first Amendment provides the only viable distinction between this case and the Maine statute barring direct delivery of tobacco that was struck down as preempted by the FAAAA in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008). The Twenty-first Amendment distinction should be decisive.

When the United States decided to end Prohibition in 1933, it did so through the compromise set forth in the Twenty-first Amendment. Section 1 repealed the Eighteenth Amendment. Section 2 was the other half of the compromise, providing unique constitutional protection for state laws regulating alcoholic beverages: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

In our federal system, which is otherwise dominated by the Supremacy Clause in Article VI of the Constitution, the language in section 2 of the Twenty-first Amendment has the unique effect of elevating the covered state

laws and regulations to the status of federal constitutional law. Congress could not, for example, pass a law requiring states to allow direct delivery of interstate wine shipments to consumers, even though Congress would be free to impose such a requirement for virtually any other article of commerce. See, *e.g.*, *Granholm v. Heald*, 544 U.S. 460, 488-89 (2005) (noting that states may ban import of alcohol altogether, or "funnel sales through the three-tier system"). Where section 2 applies, ordinary preemption doctrines under the Supremacy Clause simply do not apply.[1]

---

[1] Nobody suggests that section 2 is truly absolute. One need only hypothesize a state alcoholic beverage law discriminating on the basis of race, sex, or religion to recognize that there are limits. See *Craig v. Boren*, 429 U.S. 190, 209 (1976) (Equal Protection Clause of Fourteenth Amendment bars different drinking-age limits based on sex). Similarly, the Supreme Court has held that the Twenty-first Amendment does not authorize a state to disregard the First Amendment, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996) (striking down a ban on price advertising for alcoholic beverages), the Due Process Clause, *Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971) (requiring notice and opportunity to be heard before police publicly prohibit named individuals from buying alcohol), the Import-Export Clause, *Department of Revenue v. James Beam Co.*, 377 U.S. 341, 346 (1964) (striking down a tax on liquor imported into state from foreign country), or federal antitrust laws exercising the full commerce power of the federal government, *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 114 (1980) (striking down a resale price maintenance

(continued...)

When federal courts deal with a state law exercising the state's core Twenty-first Amendment power over transportation, importation, and sale of alcoholic beverages, including the terms of delivery, federal law requires great deference to the state law, even if the state uses that authority in ways that seem protective or benighted as a matter of sound public policy. See *North Dakota v. United States*, 495 U.S. 423, 439-40 (1990) (plurality opinion) ("But when the Court is asked to set aside a regulation at the core of the State's powers under the Twenty-first Amendment . . . it must proceed with particular care."). In *North Dakota*, the state enacted labeling and reporting requirements to protect its distribution system from diversion of imported alcohol intended for consumption on federal military bases. The regulations raised costs and even caused several producers to halt shipments to the military bases rather

---

[1] (...continued)

program). These cases do not show that the Twenty-first Amendment can be trumped by just any federal statute. They show, in essence, that a state cannot stretch its core Twenty-first Amendment powers over transportation and importation of alcoholic beverages to nullify federal law's effects over other aspects of the alcoholic beverage business. See *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 713 (1984) ("we have held that when a State has not attempted directly to regulate the sale or use of liquor within its borders—the core § 2 power— a conflicting exercise of federal authority may prevail"). These cases that fence in to some extent the states' powers under the Twenty-first Amendment should not be understood as erasing section 2 of the amendment altogether.

than comply. *Id.* at 429. Finding the regulations to be within the state's core power and directed to the legitimate interest of preventing diversion for unlawful use in the state, and absent a clear statement about preemption from Congress, the plurality allowed the incidental burdens on federal interests — with no inquiry into their precise scope other than a conclusion that there was no evidence of a substantial burden. *Id.* at 440, 443-44.

My colleagues and I agree that the Indiana law preventing retailers from using common carriers for direct delivery of wine to consumers is an exercise of the state's core Twenty-first Amendment power. We differ in our attempts to discern from the Supreme Court's few hints how this sort of preemption challenge to a state's exercise of its core Twenty-first Amendment power should be handled.

One hint appears in *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691 (1984), where the Supreme Court held that a state's prohibition on national cable television advertisements for alcoholic beverages was preempted by federal law on telecommunications. In any context not subject to the Twenty-first Amendment, there would have been no doubt that the state law was preempted. Because of the Twenty-first Amendment, however, the Court proceeded more cautiously. Yet the Court took pains to explain that the state law in question was *not* an exercise of the state's core Twenty-first Amendment power: "we have held that when a State has *not* attempted directly to regulate the sale or use of liquor within its borders — the core § 2 power — a conflicting exercise

of federal authority may prevail." *Id.* at 713 (emphasis added). Where the state advertising ban was outside the core power, the Supreme Court applied a balancing test comparable to the one my colleagues apply. *Id.* at 714-15. In my view, however, *Capital Cities Cable* does not offer helpful guidance for dealing with a preemption challenge to a state law that *is* an exercise of core Twenty-first Amendment power.

More helpful is *North Dakota v. United States*, discussed above, which held that a state's exercise of its core Twenty-first Amendment power was not preempted by federal law or intergovernmental immunity. The plurality explained: "But when the Court is asked to set aside a regulation at the core of the State's powers under the Twenty-first Amendment, as when it is asked to recognize an implied exemption from state taxation, see *Rockford Life Ins. Co. v. Illinois Dep't of Revenue*, 482 U.S. 182, 191 (1987), it must proceed with particular care. *Capital Cities Cable*, 467 U.S. at 714. Congress has not here spoken with sufficient clarity to pre-empt North Dakota's attempt to protect its liquor distribution system." 495 U.S. at 439-40. The *North Dakota* plurality also wrote: "Given the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly." *Id.* at 433, citing *Capital Cities Cable*, 467 U.S. at 714. I agree with my colleagues that a "strong presumption" is not a conclusive presumption, but the Supreme Court itself has never held a state's exercise of its core Twenty-first Amendment power to be preempted by federal law, nor

has it ever subjected such a law to the sort of balancing applied by my colleagues.

*North Dakota* did not present the more difficult preemption questions that might arise, for example, if Congress acted expressly to preempt state alcoholic beverage laws for powerful federal reasons, despite the strong directive of the Twenty-first Amendment elevating those state laws to the status of federal constitutional commands. In such cases, the difference between a strong presumption and a conclusive presumption might be important. We also do not have such a case here. The "strong presumption" and "clear statement" rule from *North Dakota* are enough to decide this case without any balancing of interests. The FAAAA did not provide any clear statement of intent to preempt alcoholic beverage laws, and the "strong presumption" should save the Indiana law from preemption without further inquiry into its effectiveness in preventing underage drinking.

In support of their balancing of interests on the preemption issue, my colleagues cite *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1330 (10th Cir. 2010), in which the Tenth Circuit ordered a district court to undertake a balancing of state and federal interests to decide whether New Mexico could enforce its alcoholic beverage laws, including training requirements for crew members, against an airline carrying passengers to

and from the state.[2] The Tenth Circuit held first that federal law occupied the field of aviation safety exclusively and then that policies and practices for serving alcohol to passengers are part of that field. The court then turned to the Twenty-first Amendment and held that the district court needed to balance New Mexico's core Twenty-first Amendment powers and the federal interests underlying the Federal Aviation Act. To support the application of balancing, the Tenth Circuit cited *Capital Cities Cable*, which addressed and supports balancing only for state alcoholic beverages *outside* the state's core powers. See 627 F.3d at 1329, citing *Capital Cities Cable*, 467 U.S. at 712-14. The Tenth Circuit's opinion read too much into *Capital Cities Cable* and did not apply the "strong presumption" and "clear statement" rule from *North Dakota*. *U.S. Airways* therefore provides a pretty thin basis for extending "balancing" to override the constitutional protection that the Twenty-first Amendment gave to a state's core powers to control transportation and importation of alcoholic beverages for consumption in the state.

Section 2 of the amendment does not include a proviso that it applies only "as long as the state laws are reasonable and do not unduly intrude on substantial federal interests." That sort of balancing of benefits and burdens can be an imposition in and of itself on the broad regulatory power granted to states within the

---

[2] The case arose after an over-served airline passenger killed himself and five other people as he drove home from the airport.

relatively narrow core of the Twenty-first Amendment. Indiana's prohibition on some direct deliveries of wine — whether it makes good sense or not, whether it helps prevent underage drinking or not, or whether it is merely a convenient compromise for a highly regulated and politicized industry — is not preempted by the FAAAA because it is an exercise of Indiana's core power under the Twenty-first Amendment. I would affirm the district court's judgment on that basis, without trying to balance the state's interests against the FAAAA's deregulatory policies for the trucking business.

II. *The Dormant Commerce Clause and the Twenty-first Amendment*

A. *Pike Balancing and the Twenty-first Amendment*

"This case pits the twenty-first amendment, which appears in the Constitution, against the 'dormant commerce clause,' which does not." *Bridenbaugh*, 227 F.3d at 849. A good starting place on the Commerce Clause issue is the text of section 2 of the Twenty-first Amendment: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." That language can be read, and was initially read by the Supreme Court, to immunize from dormant Commerce Clause challenge even state alcohol laws that facially discriminated against interstate commerce. See, *e.g., State Bd. of Equalization of California v. Young's Market Co.*, 299 U.S. 59, 62-63 (1936); accord, *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 138 (1939)

("The Twenty-first Amendment sanctions the right of a state to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause.").

More recently, however, the Supreme Court has held that the Twenty-first Amendment does not authorize express discrimination between intrastate commerce and interstate commerce. *Granholm*, 544 U.S. at 485-86 (abrogating *Young's Market* and other cases). The Supreme Court has also held that a state may not use its Twenty-first Amendment powers to regulate commercial transactions with no direct connection to the state, such as through so-called "price affirmation" statutes. See, *e.g.*, *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573 (1986).

Discriminatory and extraterritorial laws are familiar categories under the dormant Commerce Clause, and such laws rarely survive scrutiny. I agree with my colleagues that the challenged Indiana law does not fit into either category. As my colleagues point out, there is also another body of dormant Commerce Clause law. Under the shorthand "*Pike* balancing," it applies to state laws that regulate evenhandedly between intrastate and interstate commerce to effectuate legitimate local interests, but which also impose incidental burdens on interstate commerce. In such cases, the Supreme Court has adopted a balancing test. The state law will be upheld "unless the burden imposed on such [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142

(1970) (striking down law requiring all cantaloupes in Arizona to be transported in closed containers, which would have required business that used California processing facility to build new facility in Arizona). The Supreme Court, however, has not used *Pike* balancing to strike down any state alcoholic beverage laws. As I read the Court's decisions, it also has not signaled that the lower courts should apply *Pike* balancing to alcoholic beverage laws. We should not extend its use by applying it here.

My colleagues point out that the Supreme Court has mentioned *Pike* balancing in a couple of alcoholic beverage cases, but a closer look shows that the Court has not endorsed *Pike* balancing for these cases subject to the Twenty-first Amendment. In *Brown-Forman Distillers*, the Court cited *Pike* in its summary of general Commerce Clause standards, but it never returned to apply *Pike*. 476 U.S. at 579. Instead, it struck down the New York price affirmation statute based on its extraterritorial effects. *Id.* at 583-84. And in *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984), the Court cited *Pike* only in saying that because the Hawaii statute there discriminated against interstate commerce, the state was not entitled to the more flexible approach of *Pike* balancing. 468 U.S. at 270. That passing comment does not amount to even a considered dictum teaching that ordinary *Pike* balancing should apply when a state is exercising its powers under the Twenty-first Amendment.

Without any Supreme Court use or endorsement of *Pike* balancing when the Twenty-first Amendment applies, my colleagues cite several cases in which we

and other circuits seem to have endorsed *Pike* balancing in Commerce Clause challenges to alcohol laws. With a closer look, however, we find only the most indirect and meager support, without coming to grips with the states' Twenty-first Amendment powers, and without recognizing how interest-balancing intrudes upon those powers. What we do not find is a case applying *Pike* balancing and holding that a non-discriminatory state alcohol law flunks.

In *Baude v. Heath*, 538 F.3d 608 (7th Cir. 2008), our court accepted the premises of plaintiffs' legal argument and held that they had not come forward with evidence sufficient to show that the face-to-face requirement for direct wine shipments imposed an excessive burden under *Pike*. The state itself had urged our court to apply *Pike*. The *Baude* panel was not asked and did not consider whether *Pike* balancing was ever appropriate for alcohol laws in light of the Twenty-First Amendment, which is not mentioned in the opinion.

The *Baude* panel also invalidated a separate provision that forbade direct shipments by wineries that also had wholesale licenses from other states. *Id*. at 611-12. The state had not even defended that wholesaler bar, and it was supported by only speculation about benefits. The *Baude* panel concluded that the wholesaler bar was facially neutral but discriminatory in effect because 93 percent of the nation's wine production was from states that allowed producers to sell directly to retailers: "The statute is neutral in terms, but in effect it forbids interstate shipments direct to Indiana's consumers, while allowing intrastate shipments." *Id.* at 612.

Although that portion of the opinion also cited *Pike*, the invalidation of the wholesaler bar is better understood as simply an application of *Granholm* to a state statute that had discriminatory effects, not an application of *Pike* to a statute with only incidental burdens on interstate commerce. Given the way the case was argued, the *Baude* panel's approach is certainly understandable, and I believe its results were correct. The *Baude* opinion does not, however, provide a persuasive basis for applying *Pike* balancing to non-discriminatory state alcohol laws.

In *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1 (1st Cir. 2007), the First Circuit considered challenges to a host of state alcohol laws. The court briefly mentioned the Twenty-first Amendment, *Granholm*, *Healy*, and *Pike* when it introduced the Commerce Clause standards. 481 F.3d at 10-11. The discussion of *Pike* held that plaintiffs failed to show excessive burdens without paying any attention to the Twenty-first Amendment. *Id.* at 15. Without some explanation, that silence does not persuade me that *Pike* balancing is appropriate when the amendment applies. If that method of analysis were applied more broadly to state alcohol laws, there would be little left of states' powers under section 2 of the amendment.

*Freeman v. Corzine*, 629 F.3d 146, 164 (3d Cir. 2010), dealt with a number of state alcohol laws. The reference to *Pike* was only that plaintiffs had not pursued such a theory. That is not an endorsement of *Pike* balancing when the Twenty-first Amendment applies. And in *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1231 (9th Cir.

2010), the only reference to *Pike* balancing was that the plaintiffs conceded that the challenged laws would survive the test. That is also not an endorsement of *Pike* balancing.

In *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423 (6th Cir. 2008), the Sixth Circuit struck down an in-person purchase requirement for wineries shipping directly to customers. (Unlike the Indiana direct-shipment law we upheld in *Baude*, which allows a buyer to make many purchases after one in-person visit, the Kentucky law required an in-person visit for each purchase.) The plaintiffs pursued a theory of discriminatory effect, and the court agreed. That's also not *Pike* balancing, and the court did not try to reconcile *Pike* with the Twenty-first Amendment.

This track record does not amount to any convincing consensus that *Pike* balancing is appropriate when the Twenty-first Amendment applies to a law. In light of the extraordinary protection of state alcoholic beverage laws provided by the Twenty-first Amendment and the absence of any use of *Pike* balancing by the Supreme Court in such cases, we should not subject state defendants to the intrusive and uncertain scrutiny imposed under the *Pike* test.

B.  *If Pike Balancing Applies*

If a court is going to uphold a challenged law in the end, as my colleagues do, one might ask why the methodology makes a difference. I offer two reasons.

First, litigating a *Pike* test is quite intrusive. Even in the best of circumstances, *Pike* balancing puts courts in an uncomfortable and almost legislative role. As Justice Scalia wrote in his concurring opinion in *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987), the *Pike* "inquiry is ill suited to the judicial function and should be undertaken rarely if at all." 481 U.S. at 95. "The judiciary lacks the time and the knowledge to be able to strike a fine balance between the burden that a particular state regulation lays on interstate commerce and the benefit of that regulation to the state's legitimate interests." *Wiesmueller v. Kosobucki*, 571 F.3d 699, 704 (7th Cir. 2009). Asking the *Pike* question — whether a burden on state commerce is clearly excessive in relation to local benefits? — can be a lot like asking whether a blue race-car is clearly faster than it is blue. In extreme cases, such cross-categorical comparisons can be useful, but *Pike* balancing invites a wide-open inquiry into competing policy considerations and debates over the efficacy of competing solutions to perceived problems.

The *Pike* test thus requires a state agency to mobilize personnel, resources, and evidence to justify its policies, and often to do so where good evidence may be hard to come by. Speculation is not enough to show real benefits to weigh against the burdens on Commerce Clause plaintiffs. *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 447-48 (1978) (finding a dormant Commerce Clause violation where the state offered only speculation and "failed to make even a colorable showing that its regulations contribute to highway safety"); *Baude*, 538 F.3d at 612 (*Pike* balancing requires evidence of both benefits

and burdens). Getting beyond speculation can be a challenge. It's one we accept in all other contexts, but section 2 of the Twenty-first Amendment empowers states to act much more freely regarding alcoholic beverages. We should not lightly impose on them the burden of justifying their policies to federal courts.

Second, and more important, whether *Pike* balancing applies here will be decisive in other cases, and I believe it should actually be decisive in this case. On this point I respectfully disagree with my colleagues. Absent the effects of the Twenty-first Amendment, plaintiffs should have prevailed under *Pike*. At the very least, given the lopsided presentation of evidence — a good deal by plaintiffs and nothing but speculation from the state — summary judgment for the defense would not be justified under *Pike*.

Plaintiffs submitted affidavits substantiating the burden imposed on their wine fulfillment business and on wine consumption by the ban on common carrier deliveries of wine club shipments. According to its owners, Cap N' Cork stands to lose up to $45,000 in profits each year from its wine-club fulfillment business, which it apparently operated throughout Indiana via common carrier in violation of the challenged law before the state took steps to enforce it. That profit corresponds to approximately 13,000 cases of wine worth some $1,500,000 to consumers. Much of this wine was delivered outside of Fort Wayne and originated from some of the thousands of wineries that do not have direct shipment permits or access to a

licensed wholesaler. My colleagues argue that these are merely effects on plaintiffs' preferred method of doing business, not effects on interstate commerce, the latter being of course the only effects that matter under the dormant Commerce Clause.

The same might have been said of the facially-neutral packaging requirement in *Pike* itself, and that law was struck down. Economies of scale are important in analyzing the burdens of the challenged law. From the evidence submitted, we can infer that delivery of wine on a retail scale by common carriers is much more cost-effective than having a retailer use its own employees and vehicles to make deliveries. Wine retailers are in the business of selling wine, after all, not operating a cost-effective home delivery service. The fact that other retailers in Indiana are not trying to provide local delivery for wine-club fulfillment services tends to confirm the extent of the burden rather than undermine plaintiffs' theory. My colleagues' view also overlooks the status of Cap N' Cork as a participant in a stream of commerce that, but for enforcement of Ind. Code § 7.1-3-15-3(d), allows many small, out-of-state wineries and wine clubs to reach wine drinkers like plaintiffs, who enjoy a much wider variety of wines beyond those carried by the state's wholesalers.[3]

---

[3] Many of the most celebrated wine-makers in California sell primarily to restaurants and their private customer lists, do not operate facilities where in-person age verifications could occur, and rely exclusively on the fulfillment process to reach potential customers in Indiana.

Looking beyond just these plaintiffs, we see that the wine business in Indiana consists overwhelmingly of out-of-state wine. Indiana's wine production is relatively small, with just over 1.7 million gallons of wine bottled in 2010. See Alcohol and Tobacco Tax and Trade Bureau, U.S. Dept. of the Treasury, *Statistical Report — Wine* (2010), available at http://www.ttb.gov/statistics/2010/ 2010wine.pdf (last visited Jan. 9, 2012). Indiana residents consumed over 9.7 million gallons of wine in 2010. See Beer Institute, *Brewers Almanac 2011*, available at http://www.beerinstitute.org/statistics.asp?bid=200 (last visited Jan. 9, 2012). Even if Indiana exported no wine at all, over 80 percent of the wine consumed in Indiana must come from outside the state. Yet only 86 of the nearly 6000 out-of-state wineries in the United States have obtained direct shipment permits. See Snow Interrogs. No. 5. Licensed wholesalers in Indiana carry products from just several hundred wineries, among the many thousands available in the wider market.

Plaintiffs buttress their interstate burden argument with citations to the FTC Report mentioned so often in recent wine cases. See Federal Trade Commission, *Possible Anticompetitive Barriers to E-Commerce: Wine* (2003) at 5-7, 16-19, 22-26, available at http://www.ftc.gov/os/2003/ 07/winereport2.pdf (last visited Jan. 9, 2012). That report suggests that bans on direct shipment dramatically reduce consumer choice, in large part because many wineries have difficulty obtaining distribution through traditional wholesalers and retailers. See, *e.g., id.* at 24. The facially neutral burdens of obtaining retail distribution in Indiana fall more heavily on wineries from Cali-

fornia, Oregon, and Washington than on wineries from Indiana. That does not make the Indiana law discriminatory, but it describes the incidental effects on interstate commerce that invite *Pike* balancing in other contexts.

Plaintiffs again cite the FTC Report, as well as a report from the National Academies of Science, to suggest that direct shipment via age-verifying common carriers adequately inhibits youth access to wine. See *id.* at 26-27; *Granholm*, 544 U.S. at 490 (considering the FTC findings). There is simply no evidence in the record even suggesting that wine club shipments of high-end wines are a method used by minors seeking to evade age limits.

As I see the case, Indiana's problem here is that it has chosen to allow some direct deliveries by common carriers to consumers, but not others. The selective approach undermines the state's rationale for the challenged law. If a consumer has ever visited in person a winery with the proper direct-shipping license for Indiana, so that the winery could confirm the consumer is at least 21 years old, the winery may use a common carrier to make direct deliveries to that consumer. Ind. Code § 7.1-3-26-9(1)(A). The state is satisfied with any adult signature upon delivery; it need not be from the consumer whose age was verified by the winery. But in many other circumstances, such as the wine clubs that plaintiffs seek to join, common carriers may not be used. Ind. Code § 7.1-3-15-3(d). As a result of this inconsistency, it is hard to give much weight to Indiana's arguments about the salutary purposes served by the challenged law.

My colleagues suggest that section 7.1-3-15-3(d) reasonably blocks wine club deliveries by common carrier because of the lack of face-to-face age verification either by an Indiana retail store employee or in an out-of-state winery. Indiana requires age-verification training for employees of Indiana retailers who may sell wine face-to-face or deliver wine directly to customers. Ind. Code § 7.1-3-1.5-6. Indiana does not (and could not) require such training for the out-of-state winery employees, and does not require it for delivery drivers who are already involved in direct shipments to customers. See Ind. Code §§ 7.1-3-26-9, 7.1-3-18-1 *et seq.* But defendant's own evidence showed that 35 percent of (trained) Indiana licensees sold alcohol to underage customers in under-cover police tests in 2009. Poindexter Aff. ¶ 15. One might reasonably conclude from that data, and from the absence of any evidence of underage deliveries through high-end wine clubs, that the prohibited common carrier deliveries pose little threat to the state's legitimate interests. For permitted direct shipments by common carrier, the in-person visit to the winery could have been years ago, adding little or nothing to the state's confidence level, and the delivery driver needs only an adult signature from someone, not necessarily from the named buyer. If those arrangements are acceptable to the state, it's hard to see why wine club deliveries by common carrier should not be.

In an attempt to show that the burdens on interstate commerce do not clearly outweigh the state's interest in preventing underage drinking, the state relies on

conclusory affidavits from two of its excise agents asserting that age verification in face-to-face transactions is "one effective barrier to youth access" to alcohol. See Poindexter Aff. ¶ 6. That's about it for the defense on the merits.

Such speculation should not be enough to meet the state's burden. Given Indiana's selective ban on common carrier deliveries, under genuine *Pike* balancing, Indiana should need some evidence supporting the notion that retailer employees are at least marginally better than common carrier employees at obtaining genuine adult signatures. In other words, the state should need some evidence giving some reason to expect that Cap N' Cork employees are better at face-to-face age verification than UPS drivers. As plaintiffs point out, there is simply no such evidence in the record. Indiana allows UPS delivery drivers to deliver wine for holders of direct shipment permits, and it requires a face-to-face verification to be performed by those drivers. See Ind. Code §§ 7.1-5-10-23, 7.1-3-26-9(2)(B) & (D), and 7.1-3-26-13. Responding to interrogatories, the state admitted that it had experienced "no difficulties in regulation" and "no complaints" regarding common carriers and direct shipment. Snow Interrogs. No. 9. As far as the stated rationale for the challenged law goes, the law is a solution in search of a problem.[4]

---

[4] With regard to the favored deliveries by retailer employees, though, the state has had some difficulty with retailers' "failure to maintain adequate records." *Id.* at No. 11.

When a regulation burdens interstate commerce only indirectly and incidentally, we do not require states to legislate in the most efficient possible manner. If we are applying genuine *Pike* balancing, though, there must be at least some sign of incremental benefit from the state regulation. See *Pike*, 397 U.S. at 142 ("And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."); see also *Raymond Motor Transp.*, 434 U.S. at 447-48 (state failed to produce evidence that the permitted 55-foot truck trailers were any safer than the prohibited 65-foot trailers). Again, speculation about benefits is not enough to satisfy *Pike*. *Id.*; *Baude*, 538 F.3d at 612. Here the state provided evidence related to the conceded importance of its interest but has left an evidentiary vacuum with regard to the efficacy of section 7.1-3-15-3(d) in service of that interest. In my view, the Twenty-first Amendment is the only rescue for the challenged law, and that's why the district court was correct to enter judgment for the defendant.

\*   \*   \*

The organization of the alcoholic beverage industry is a product of a legal structure from the earlier age that first adopted Prohibition and then repealed it with the Twenty-first Amendment. What has evolved is a collection of Balkanized state markets and legal systems that regulate an industry with enormous influence over the lawmakers who regulate it. The system can easily

devolve into ossified protection of incumbent businesses, as with the protection of the three-tier distribution system — a model that may seem to have less and less value as the internet and e-commerce flatten the global marketplace. Yet the extraordinary constitutional status given to state alcoholic beverage laws in the Twenty-first Amendment was the compromise that allowed the repeal of Prohibition. Rather than asking courts to erode that compromise, those seeking a more progressive organization of the industry should turn to state-by-state political action on behalf of consumers who are hurt by these laws designed primarily to protect incumbents in the industry.